**In re POWER ENGINEERING CO.**

**CHATHAM BANK OF CHICAGO v. CHATZ.**

**No. 9784.**

United States Court of Appeals
Seventh Circuit.

Oct. 13, 1949.

Arthur Abraham, Louis B. Getz, Chicago, Ill., for appellant.

William S. Collen, Joseph L. Kadison, Chicago, Ill., Lawrence E. Lewy, Chicago, Ill., of counsel, Attorney for John H. Chatz, Receiver-Trustee for Power Engineering Co., Bankrupt, Appellee.

Lee Walker, Stephen R. Chummers, Chicago, Ill., Attorneys for Reconstruction Finance Corporation as Amicus Curiae.

Before MAJOR, Chief Judge, FINNEGAN, Circuit Judge and LINDLEY, District Judge.

MAJOR, Chief Judge.

This cause arises from the filing of a Reclamation Petition by the Chatham Bank of Chicago in the bankruptcy proceedings of Power Engineering Company, praying for an order directing John H. Chatz, the Receiver, to surrender and turn over to the bank certain described machinery and equipment of which the bank claimed to be the owner by virtue of a Bill of Sale and a Conditional Sales Contract. Answers to the bank's petition were filed by the Receiver and also by the bankrupt, alleging that the Bill of Sale and the Conditional Sales Agreement upon which the bank relied were void for failure to comply with the Illinois Bulk Sales Law, Ill.Rev.Stat.1947, c. 121½, § 78 et seq., and were fraudulent as to the Receiver and the creditors of the bankrupt. After hearing, the Referee entered an order sustaining the petition and directing that the chattels involved be turned over to the bank. Upon the Receiver's petition for review of the Referee's order, the District Court sustained the petition, entered an order vacating the order of the Referee and denying the petition of the bank. It is from this order that the appeal comes to this court.

On October 9, 1946, the bank loaned the Power Engineering Company the sum of $25,000, and three instruments were simultaneously executed between the parties: (1) a Bill of Sale by Power Engineering Company to the bank, purporting to convey certain machinery and other equipment therein described; (2) a Conditional Sales Contract, whereby the bank purported to sell to Power Engineering Company the same machinery and equipment for the sum of

$25,000 and interest, and (3) a loan agreement, under the terms of which it was provided: (a) Power Engineering Company was to deposit with the bank all its outstanding stock; (b) Power Engineering Company agreed "to constitute one J. W. Hutcherson, Comptroller and Office Manager of said corporation empowering him as such Comptroller to countersign any and all documents, contracts, agreements, checks or other writings" and "to amend its By-Laws providing for such authority"; (c) Power Engineering Company further agreed "to obtain a Fidelity Bond for said Comptroller payable to the Bank. The premium for said bond and the salary of said Comptroller shall be borne by the corporation"; (d) Power Engineering Company further agreed that "it will permit Henry J. Rossbach, a certified Public Accountant, to supervise, audit and examine any and all records of said corporation and to report his findings to the Bank. That said Henry J. Rossbach shall have the right to do any and all the acts above provided weekly, or oftener, if, in the opinion of the Bank, said action is necessary. The cost for the services of said Henry J. Rossbach shall be borne by the Corporation" (Rossbach was a director of the bank); and (e) it was also agreed that the corporation was to turn over to the bank all monies and invoices of sales made by it and that such monies and invoices received by the bank were to be disbursed as follows: 50% to be applied by the bank toward the retirement of the loan made by the bank to the corporation, 35% to be deposited to the credit of the Power Engineering Company, against which it was authorized to draw in order to carry on its business, meet its payroll and other operating expenses, and the remaining 15% to be held by the bank as additional security for the $25,000 loan.

None of the instruments referred to were filed for record under the Illinois Chattel Mortgage Act, Ill.Rev.Stats.1947, Chap. 95, Secs. 1 and 4, or otherwise, except the Conditional Sales Contract, which was filed for record March 25, 1947. It is not claimed that this recordation is of any benefit to the bank in the present litigation.

In spite of the numerous conflicting claims advanced here, two salient propositions emerge, both of which are conceded, or at any rate are not in dispute: (1) that the instruments executed between the parties had the effect of a chattel mortgage, and (2) such instruments were not filed for recording within the terms of Sec. 4 of the Chattel Mortgage Act. The bank, somewhat at variance with the issues created by the pleadings and advanced in the court below, contends that it is entitled to prevail under Sec. 1 of said Act because at the time of the execution of the instruments possession of the chattels was delivered to and remained with it. It appears, therefore, that unless the bank maintains the affirmative on this issue it cannot prevail on this appeal. And a decision adverse to the bank on this issue will obviate any occasion to discuss or consider other issues raised here or considered in the court below.

The Referee made findings of fact upon which its order favorable to the bank was predicated, and included therein was a finding that the bank did on October 9, 1946 take possession of the chattels described in the Bill of Sale and Conditional Sales Contract. There may be some doubt as to the weight which we should attach to this finding, inasmuch as the order of the Referee was set aside by the District Court; but it is fair to state that the court in its memorandum opinion did not specifically affirm or disaffirm the finding. For the purpose of this decision, however, we assume that this finding as to possession of the chattels should not be set aside unless clearly erroneous, as required by Rule 52(a) of the Rules of Civil Procedure, 28 US.C.A.

As bearing upon this issue, the only evidence other than the documents is that of Mr. Pernet, president of Power Engineering Company, and Mr. Riley, president of the bank. The loan was negotiated by these two persons. Pernet's testimony is that Riley proposed to him that a chattel mortgage be executed to secure the loan, but that he, Pernet, objected because of the publicity and consequent injury to their credit. Pernet further testified that he informed Riley that they could have obtained all the money

they wanted if they had been willing to make a chattel mortgage. In response, Riley stated "that he was going to see if they can fix it up some other way * * * if they can make it some other way which is just as secure without putting it in the papers." Thus, it appears that the parties had an understanding that the recording provision of the Chattel Mortgage Act was to be avoided so that knowledge of the transaction would not be acquired by third persons.

The documentary evidence, in our judgment, is equally impotent as the basis for a finding that the bank acquired possession. As already noted, the Bill of Sale, Conditional Sales Contract and loan agreement were executed simultaneously. They were prepared by the bank. True, the Bill of Sale recites that the chattels were sold and delivered to the bank, but by the terms of the Conditional Sales Agreement the same chattels were immediately sold on condition and "delivered" by the bank to the Power Engineering Company. This contract expressly provided that "delivery and acceptance" of the chattels thereafter described "is hereby acknowledged by the Power Engineering Company." The contract also contained a provision that in the event of default in the terms thereof, the bank would have the right "to take immediate possession of said property," and "for this purpose" to "enter upon the premises where said property may be and remove the same." How the bank can logically contend that it acquired and retained possession of the chattels in view of these express provisions of the contract is not apparent to us. More than that, counsel for the bank at the hearing before the Referee attempted to prove that "in the latter part of May 1947" the bank threatened "to take possession of the chattels." If the bank acquired possession on October 9, 1946, as it now asserts, it is difficult to discern the reason for its threat to take possession in May, 1947.

Much is said, however, concerning the provisions of the loan agreement. It is significant to note that this instrument prepared by the bank made no express provision for possession of the chattels by the bank. We have heretofore set forth the main provisions of this agreement and need not repeat. Just how or in what manner the provisions for delivery of the debtor's corporate stock to the bank, or the resignation of the debtor's officers and directors (no evidence that such were acted upon or accepted), or the provision by which the bank was given certain designated control over the debtor's income and expenditures, are any evidence of the bank's possession of the chattels is not discernible. Especially is this so in view of the express provision of the Conditional Sales Contract which lodged possession with the debtor. Another point inimical to the bank's contention is, as already noted, the secret nature of the transaction between the parties.

There is no evidence that the bank placed any of its representatives in the position of officers of the debtor company. The proof does show that the same management was in authority and control after the loan as prior thereto. Pernet testified that he ran the business before the loan and after the loan. This point is emphasized in the bank's brief, which states, "If Pernet, the President and guiding spirit of Power Engineering Co., had been an honest man and had kept his agreement, no loss would have been suffered by any creditor." Neither is there any substance to the bank's claim to possession based upon its designation of Rossbach, auditor of Power Engineering Company, and Hutcherson, its bookkeeper, as the bank's "representatives". Both of these men performed their duties at the office of the debtor located at 361 East Ohio Street, while the location of the chattels of which the bank claims possession was at 2112 Southport Avenue, many miles from the office of the debtor. One of these men never visited the plant where the chattels were located and the other was there on two occasions to deliver payrolls. They were at all times paid by the debtor and worked under the supervision and direction of Pernet, the debtor's president.

Many Illinois cases are cited as to what constitutes possession by a mortgagee so as to obviate compliance with the recording provision of the Chattel Mortgage Act. No good purpose could be served and it would unduly prolong this opinion to cite, much

less discuss, such cases. It is evident from a reading of these cases that each is dependent upon its own particular facts. There is no case called to our attention which sustains the bank's contention in the instant matter. The case in which the bank professes to find its strongest support is Martin v. Sexton, 112 Ill.App. 199. There, the lender specifically designated an agent to take physical possession and control and to operate the business and the premises on which it was conducted. The agent thereupon assumed actual control of the business, reorganized the restaurant part in which the mortgaged chattels were located, and was instructed by the lender to report to him, take charge of the cash, pay the bills and deposit the proceeds in the bank to the lender's credit. These orders of the lender were complied with, with the consent and approval of the debtor. More than that, the lender visited the store every day, consulted with his agent on the premises where the business was located, looked over the accounts and gave directions concerning the business. In addition, the third party who was contesting the lien asserted by the lender had actual knowledge of the facts as above stated. Under these circumstances, the court held that the lender had possession of the chattels and therefore a prior lien, particularly as to the third party who had actual notice.

The facts in the case just noted are a far cry from those of the instant case where creditors of the debtor and third parties had no notice, either actual or constructive, that possession of the debtor's chattels was in the bank. In our view, the bank's present contention in this respect was an afterthought born to meet the exigencies of the situation with which it was confronted when the debtor became a bankrupt. We conclude that the finding of the Referee that the bank on October 9, 1946 took possession of the chattels in controversy was clearly erroneous.

It follows from what we have said that the bank's petition for reclamation of such chattels was properly denied by the court below. The order appealed from is, therefore,

Affirmed.